768 F.2d 45
 38 Fair Empl.Prac.Cas. 801,
37 Empl. Prac. Dec. P 35,487
Richard CERBONE, Plaintiff-Appellant,
v.
INTERNATIONAL LADIES' GARMENT WORKERS' UNION, New York Coat,
Suit, Dress, Rainwear, and Allied Workers' Union, Sol C.
Chaikin, Individually, Sam Byer, Individually, and Sam
Nemaizer, Individually, Defendants-Appellees.
 No. 1039, Docket 85-7022.
 United States Court of Appeals,
Second Circuit.
 Argued April 26, 1985.
Decided July 17, 1985.
 
 Frank H. Wright, New York City (Maranda E. Fritz, Grand & Ostrow, New York City, on brief), for plaintiff-appellant.
 Nicholas F. Lewis, New York City (Lewis, Greenwald, Kennedy & Lewis, P.C., New York City, on brief), for defendants-appellees.
 Before FEINBERG, Chief Judge, FRIENDLY and NEWMAN, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal concerns application of the doctrine of equitable tolling of a statute of limitations in the context of a claim asserted under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634 (1982). Plaintiff-appellant Richard Cerbone commenced this action in the District Court for the Southern District of New York (Richard Owen, Judge) alleging that his employers, defendants-appellees International Ladies' Garment Workers' Union ("ILGWU") and New York Coat, Suit, Dress, Rainwear and Allied Workers' Union (the "Joint Board") (collectively the "Union"), violated the ADEA by forcing him to retire solely on the basis of his age. The defendants moved for summary judgment on the ground that Cerbone's claim was barred because he had failed to file a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discrimination. 29 U.S.C. Sec. 626(d)(1).[1] The District Court granted the motion, rejecting Cerbone's contention that he had alleged facts on which a jury could find that the limitations period had been tolled. The District Court also dismissed Cerbone's pendent claims sounding in contract, fraud, and quantum meruit. We affirm. Accepting Cerbone's allegations as true, the case does not present facts on which a jury could find that the limitations period was tolled or that the defendants were estopped to rely on the limitations bar.
 
 
 2
 Cerbone's age discrimination claim is based on the following circumstances. The Joint Board is a labor organization composed of a number of ILGWU locals. For many years Cerbone was employed as manager-secretary of one such local. In the summer of 1981 the Union decided to dissolve three locals, including the local managed by Cerbone, by merging them into four other locals. Cerbone alleges that the Union dissolved the three locals in order to force their managers, all of whom were over sixty years old, to retire.[2] Cerbone retired on January 1, 1982, at which time he was sixty-seven years old. He filed his discrimination charge with the EEOC on October 25, 1982, after expiration of the pertinent 180-day period. After learning that the EEOC had discontinued processing the charge, Cerbone commenced this action on October 14, 1983. From the time of the alleged discrimination until the filing of this action, Cerbone was represented by counsel.[3]
 
 
 3
 Ruling on the defendants' motion for summary judgment, the District Court determined that the 180-day limitations period began to run in the summer of 1981 when Cerbone first believed that the defendants were discriminating against him. Finding that Cerbone had not alleged facts entitling him to invoke the equitable tolling doctrine, the District Court held that Cerbone's EEOC charge was not timely and, therefore, granted the defendants' motion for summary judgment.
 
 
 4
 Cerbone contends that the case presents circumstances from which a jury could find that the limitations period was tolled. He relies on representations made to him by defendant-appellee Sol Chaikin, president of ILGWU. During the summer of 1981, after Cerbone learned that the Union wanted him to retire, he met with Chaikin on two occasions. At the first meeting, Cerbone informed Chaikin that he was healthy, that he did not want to retire, and that he did not know what he would do with himself if he did retire. Chaikin responded by saying that he would "make it good" to Cerbone and by offering Cerbone a position as director of retiree activities, a somewhat casual, part-time task, in which he would organize meetings and establish clubs of retired members of ILGWU. Chaikin promised Cerbone that he would be paid $75 for every meeting he organized, up to a maximum total of $5,000 during the first year and $6,000 the following year. Chaikin explained that it was necessary for Cerbone to retire because ILGWU had "very young business agents who want to be managers." At the second meeting, Cerbone again protested that he did not want to retire, and he asked Chaikin to give him another job. Chaikin replied that he could not offer Cerbone a job and urged Cerbone to accept the position discussed at the first meeting. Cerbone objected to that plan because he viewed the position as a "title without any money," but he ultimately agreed to take the position. Cerbone then reminded Chaikin of his promise of compensation. Chaikin answered, "I will let you know."
 
 
 5
 It is undisputed that, following Cerbone's retirement, he was given the promised position and reimbursed for certain expenses he incurred in carrying out his new duties. However, he was not paid any money based on the number of meetings he organized. When he did not receive the promised pay, Cerbone attempted to contact Chaikin, who failed to return his calls. Ultimately, Cerbone realized that Chaikin did not intend to honor his promise, and he decided to file a charge of age discrimination with the EEOC after the limitations period had expired. Cerbone contends that a jury could find that the limitations period set forth in the DEA was tolled by reason of Chaikin's misrepresentation that he would be compensated if he accepted the new position.
 
 
 6
 The federal doctrine of equitable tolling of a statute of limitations was developed in the context of actions based on fraud. See Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875). The essence of the doctrine "is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Long v. Abbott Mortgage Corp., 459 F.Supp. 108, 113 (D.Conn.1978). Since the nature of a fraud or subsequent actions taken by the defendant to conceal the fraud may have made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired, the courts fashioned the doctrine of equitable tolling to relieve the plaintiff of the rigor of the statutory bar. See Holmberg v. Armbrecht, 327 U.S. 392, 396-97, 66 S.Ct. 582, 584-85, 90 L.Ed. 743 (1946). Under this doctrine, the statute does not begin to run until "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." City of Detroit v. Grinnell Corp., 495 F.2d 448, 461 (2d Cir.1974). The doctrine has been applied in cases alleging causes of action other than fraud where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action. See, e.g., Barrett v. United States, 689 F.2d 324, 327-30 (2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); Richards v. Mileski, 662 F.2d 65 (D.C.Cir.1981); NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 382-84 (9th Cir.), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979).
 
 
 7
 In recent years the doctrine has been invoked by age discrimination plaintiffs seeking to avoid the bar of the ADEA provisions governing the filing of EEOC charges. See, e.g., O'Malley v. GTE Service Corp., 758 F.2d 818 (2d Cir.1985); Miller v. International Telephone and Telegraph Corp., 755 F.2d 20 (2d Cir.1985); Kriegesmann v. Barry-Wehmiller Co., 739 F.2d 357 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); Meyer v. Riegel Products Corp., 720 F.2d 303 (3d Cir.1983), cert. dismissed, --- U.S. ----, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); Coke v. General Adjustment Bureau, Inc., 640 F.2d 584 (5th Cir.1981). Our court has recognized that in appropriate circumstances the time periods governing filing of an age discrimination charge with the EEOC may be "tolled or delayed." Miller v. International Telephone and Telegraph Corp., supra, 755 F.2d at 24. Though ordinarily the applicable period starts to run on the employer's commission of the unlawful act and is not tolled "pending the employee's realization that the conduct was discriminatory," a court might in some cases permit tolling "as a matter of fairness." Id. For example, equitable tolling might be applied to relieve a plaintiff who was "actively misled by his employer" or who was "prevented in some extraordinary way from exercising his rights." Id. We have noted that such an extraordinary circumstance might be presented "if the employee could show that it would have been impossible for a reasonably prudent person to learn that [an employment decision] was discriminatory." Id.
 
 
 8
 This case presents no such extraordinary circumstance. According to his deposition testimony, Cerbone was fully aware that he had a potential age discrimination claim against his employers as early as the summer of 1981. He stated that he began to suspect that he was being discriminated against when he learned of the proposed merger of the locals and was asked by Joint Board officials if he planned to retire after his local was dissolved. Moreover, the statements that Cerbone attributes to Chaikin concerning the Union's desire that the older managers retire to make way for the promotion of young officials indisputably put Cerbone on notice that he had a basis for an age discrimination claim.
 
 
 9
 Nevertheless, Cerbone insists that summary judgment was improper, relying on a line of cases in which the employee alleged that he had delayed filing a discrimination charge because, subsequent to his discharge, demotion, or forced retirement, his employer had promised to reinstate him in his former position or in a comparable alternative position. Under these circumstances, courts have held that it was improper to grant summary judgment to the employer on the ground that the action was timebarred. See Coke v. General Adjustment Bureau, Inc., supra, 640 F.2d at 595-96; Ott v. Midland-Ross Corp., 600 F.2d 24 (6th Cir.1979); Bonham v. Dresser Industries, Inc., 569 F.2d 187, 193 (3d Cir.1977), cert. denied, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). On the facts presented in those cases, a jury could find that the statute of limitations was suspended for the period in which the employee was attempting "amicably to resolve his employment situation" and the employer was at least "sending positive signals" as to the possibility of reinstatement. Bonham v. Dresser Industries, Inc., supra, 569 F.2d at 193 (footnote omitted).
 
 
 10
 The holdings in the "reinstatement" cases cited by Cerbone may be explained on either of two alternative theories, neither of which aid Cerbone. First, the cases can be viewed as applications of the doctrine that a limitations period is tolled because the employer concealed from the employee the existence of the cause of action. Though the employer had made an employment decision adverse to the employee, the employer thereafter promised to reinstate the employee. Until breached, that promise could be found to have justified the employee's belief that the original adverse decision was not motivated by a discriminatory purpose. Accordingly, equitable considerations suggest that the employee should not be penalized if he delays in filing his EEOC charge for a reasonable period while he waits to learn if his employer intends to honor the promise of reinstatement. But, as we noted above, this case presents no facts on which a reasonable jury could find that the Union misled Cerbone with respect to the existence of his ADEA claim. During the very meetings in which Chaikin made the promises that form the basis of Cerbone's reliance on the tolling doctrine, he made other statements that plainly revealed the Union's discriminatory reasons for forcing Cerbone to retire.
 
 
 11
 Second, the "reinstatement" cases can be viewed as fashioning a doctrine that the employer is estopped from asserting the limitations bar because he represented, in effect, that he would settle the ADEA claim, and the employee delayed in filing his EEOC charge in reliance on that promise. Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit. See Gieringer v. Silverman, 731 F.2d 1272, 1278-79 (7th Cir.1984); Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir.1981). Equitable estoppel has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation. See, e.g., Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); City of Bedford v. James Leffel & Co., 558 F.2d 216 (4th Cir.1977) (applying Virginia law). One factor that frequently appears in the estoppel cases is a settlement negotiation. Thus, where the defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit until after the statute has run, the defendant may be estopped to rely on the limitations defense. See, e.g., Atkins v. Union Pacific R. Co., 685 F.2d 1146 (9th Cir.1982); United States v. Reliance Insurance Co., 436 F.2d 1366 (10th Cir.1971).
 
 
 12
 The ADEA cases on which Cerbone relies may be explained as invoking equitable estoppel premised on the existence of settlement negotiations. The ADEA authorizes courts to award, among other remedies, reinstatement to an employee who establishes, for example, that his employer fired him because of his age. See 29 U.S.C. Sec. 626(b). An employer who, prior to suit, promises reinstatement may be viewed as representing that he is willing to settle the employee's ADEA claim by the offer of a job assignment and benefits substantially equivalent to the employee's former position. Where the employee reasonably relies on such representation and delays in filing his EEOC charge until after the limitations period has expired, the employer may be estopped to assert the limitations bar in a subsequent ADEA action.
 
 
 13
 The undisputed facts of this case, however, would not permit a jury to conclude that the Union's representations constituted an offer of settlement of an ADEA claim. Cerbone's deposition testimony makes clear that the Union refused to offer him an alternative, full-time position. Rather, having informed Cerbone that he was being retired because of his age, the Union simply chose to extend him some minor benefits in order to ease his transition from full-time employment to retirement.[4] On the facts of this case, no reasonable juror could find that Cerbone and his attorney had a basis for believing that the Union's promise of $75 for organizing an occasional meeting was offered in settlement of an ADEA claim or in voluntary compliance with the remedial provisions of the ADEA and that, therefore, they need not file a timely charge with EEOC.
 
 
 14
 The judgment of the District Court is affirmed.[5]
 
 
 
 [1]
 Because New York is a "State which has a law prohibiting discrimination in employment because of age and establishing ... a State authority to grant ... relief from such discriminatory practice," 29 U.S.C. Sec. 633(b), the ADEA ordinarily provides a victim of age discrimination in New York 300 days in which to file his charge with the EEOC, id. Sec. 626(d)(2). However, the parties agree that the 180-day period provided in section 626(d)(1) applies in this case because the State law provisions in effect at the time of this suit do not cover Cerbone. N.Y.Exec.Law Sec. 296(3-a)(a) (McKinney 1982) (prohibiting employers from discriminating against persons between eighteen and sixty-five); see id. (McKinney Supp. 1984-1985) (amended version effective January 1, 1986, covering persons eighteen and older)
 
 
 [2]
 The Union alleges that pressing financial problems forced it to dissolve the locals. To support this assertion, it points out that, by the summer of 1981, the Joint Board's deficit exceeded $1 million
 
 
 [3]
 Cerbone concedes that he was represented by his son, an experienced labor lawyer, with whom he consulted after he learned that the Union sought to force his retirement
 
 
 [4]
 The Fourth Circuit has held that an employer's "attempt to mitigate the harshness of a decision terminating an employee, without more, cannot give rise to an equitable estoppel." Price v. Litton Business Systems, Inc., 694 F.2d 963, 965 (4th Cir.1982) (footnote omitted). Similarly, we are reluctant to fashion tolling or estoppel rules that would deter an employer who makes a decision to discharge or demote an employee from seeking to ameliorate the effects of that decision. Cf. O'Malley v. GTE Service Corp., supra, 758 F.2d at 822 ("[T]o penalize [the employer] for its continued efforts after [the employee's] retirement to provide him with additional benefits would be unfair, and would discourage employers from taking such favorable, but optional measures.") (citing Pfister v. Allied Corp., 539 F.Supp. 224, 227 (S.D.N.Y.1982)). If every promise of future kindness could be found to present a jury question with respect to tolling of the limitations period, employers might be hesitant and, in some cases, unwilling to make such promises
 
 
 [5]
 In affirming dismissal of the ADEA claim as time-barred, we also affirm the District Court's decision not to exercise pendent jurisdiction over Cerbone's state law claims