Abdul **MAJID,** a/k/a Anthony Laborde, Plaintiff,

v.

Ralph **FIELITZ** and Robert Acken, Defendants.

No. 83 Civ. 7409 (RWS).

United States District Court, S.D. New York.

Nov. 7, 1988.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for plaintiff; David B. Howorth, David A. Koenigsberg, Steven J. Miller, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Melissa Saren, Asst. Atty. Gen., of counsel.

## OPINION

SWEET, District Judge.

Defendants Ralph Fielitz ("Fielitz") and Robert Acken ("Acken") have moved *in limine* to exclude evidence pertaining to the allegations of plaintiff Abdul Majid ("Majid") of fraudulent concealment on the grounds that the evidence is relevant only to claims as to which there are no disputed issues of material fact. Fielitz and Acken also contend that the probative value of the evidence is outweighed by its prejudicial effect. Upon the facts and conclusions set forth below, the motion is denied.

### The Pleadings

Majid is an inmate at Green Haven Correctional Facility ("Green Haven"). Fielitz and Acken were, at the time of the events complained of, members of the security staff at Green Haven. This action, based upon 42 U.S.C. § 1983, involves events arising out of the transfer of Majid from the Queens County House of Detention to Green Haven Special Housing Unit ("SHU") on April 28, 1983. Majid alleges that while he was being transferred, he was assaulted by state officers in the foyer adjacent to the elevator and that Acken and other individuals concealed evidence relating to the incident.

### Prior Proceedings

On October 11, 1983, Majid filed his original complaint in this action naming as defendants Fielitz and others. Acken was not named in the original complaint. On August 29, 1984, the Honorable Leonard B. Sand denied a motion to dismiss Majid's complaint for failure to state a claim. On May 21, 1985, Judge Sand denied a summary judgment motion with respect to the assault claim, and on December 6, 1985, he denied a motion for summary judgement based upon the videotape of Majid's admission to the SHU at Green Haven.

On October 24, 1986, in the course of discovery, Majid requested pictures of four correction officers in order to identify the alleged assailant. Majid identified Acken from these photographs. On March 12, 1987, Judge Sand granted Majid's motion for leave to file an amended complaint adding Officer Acken, the alleged assailant, as defendant. He also added allegations of fraudulent concealment of evidence in anticipation of a statute of limitations defense. Further, the new complaint alleged that Fielitz failed to supervise Acken and stop the assault.

Fielitz and Acken moved to dismiss the amended complaint as barred by the statute of limitations, but Judge Sand denied the motion to dismiss on June 21, 1987. After further discovery, defendants moved for summary judgment, but the Honorable Richard J. Daronco, to whom the action had been reassigned, denied the motion, noting the factual conflict with respect to Fielitz's conduct and Acken's presence, and reserving for a future time determination of the tolling issue of the statute of limitations as to the claim against Acken.

### The Facts

The Department of Correctional Services ("DOCS") operates and maintains a video monitoring system in the Green Haven SHU which records on tape and tracks the movement of inmates into or out of their cells. In February, 1985, Majid asked to view the tapes of his movement on April 28, 1983. Supervisors at Green Haven thus asked video monitors to retrieve the relevant tapes.

In order to make a copy of a tape showing Acken's movements, a video monitor searched several tapes and put together a composite record. In the composite tape given to Majid, there was a thirty-five minute gap on the tape from the time that Majid exited the elevator with a single officer to the time when several officers crossed the rotunda area to return to the area where Majid was held. The alleged assault was not on the composite tape. Majid claims that the attack took place during this thirty-five minute gap. He also contends that the corner of the room where the assault allegedly took place is not in view of the video cameras, and that his assailants were aware of this fact when they beat him.

Late in 1985, Green Haven decided to reuse all tapes that had been in storage for over one year "unless there is a case pend-

ing." Over one hundred tapes were recycled, including those related to this litigation, which were reused on December 2, 1985 (notwithstanding the pendency of this lawsuit).

*Fraudulent Concealment and Equitable Tolling*

In *Keating v. Carey*, the Court of Appeals for the Second Circuit explained that "[t]he timeliness of § 1983 actions is determined by the ... state statute of limitations." 706 F.2d 377, 381 (2d Cir.1983) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). The statute of limitations on a § 1983 action in New York is three years. N.Y.Civ.Prac.Law R. § 214(2).

Majid seeks to toll this three year statute of limitations as to his claim against Acken on the grounds that Acken and others concealed the identity of Acken from him, rendering him unable to prove Acken's identity, despite his due diligence. Majid seeks to introduce at trial the operation of the video monitoring system at Green Haven, the gap in the video tape of his admission, and the recycling and reuse of videotapes by Green Haven in December, 1985 to support these allegations of fraudulent concealment.

According to defendants, the evidence in question is relevant only to Majid's claim of fraudulent concealment. The evidence is not relevant, they assert, to the allegations of assault. Basing their contention in part upon Judge Daronco's Memorandum Order of October 27, 1987, which states that "[p]laintiff has not furnished any evidence of either defendants' participation in a conspiracy to conceal defendant Acken's identity,"[1] Fielitz and Majid claim that the court has already determined that Majid has failed to support his allegations of fraudulent concealment. Thus, Majid and Fielitz argue, the evidence in question should be excluded.

Pursuant to the federal doctrine of fraudulent concealment, "when the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Keating v. Carey*, 706 F.2d at 382. *See also Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423 (S.D.N.Y.1986) ("A plaintiff who seeks to invoke the doctrine of fraudulent concealment must plead and prove (1) the wrongful concealment by the defendant of its actions, (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiff's due diligence to discover the facts."). Fielitz and Acken argue that Judge Daronco intended to resolve the fraudulent concealment issue, and that such evidence should not be introduced to the jury. According to Majid, however, Judge Daronco found only that there was no conspiracy by Fielitz or Acken to conceal Acken's identity. Thus, it must be determined whether the doctrine of fraudulent concealment or equitable tolling can be applied when a plaintiff is unable to ascertain information pertinent to a claim, and the defendant is not at fault for the plaintiff's lack of information.

The doctrine of equitable tolling focuses on plaintiff's purported ignorance of a claim rather than on defendant's alleged concealment of the claim. *See Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir.1981). As the Court of Appeals for the Second Circuit has stated, "[t]he essence of the doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir.1986) (citing *Cerbone v. Intern. Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985), quoting *Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 113 (D.Conn.1978)). Thus, if equitable tolling is applied, a statute of limitations does not begin to run until "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowl-

---

1. Majid had alleged a conspiracy to conceal evidence until his reply to this motion, in which he abandoned the conspiracy argument.

edge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Cerbone v. Intern. Ladies' Garment Workers' Union,* 768 F.2d at 48 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 461 (2d Cir. 1974)).

Although the doctrine of equitable tolling applies when a defendant has taken positive steps to keep a claim concealed, defendant's steps are not always necessary to invoke the doctrine. *See, e.g., Cerbone v. Intern. Ladies' Garment Workers' Union,* 768 F.2d at 48 ("Since the nature of a fraud *or* subsequent actions taken by the defendant to conceal the fraud may have made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired, the courts fashioned the doctrine of equitable tolling....") (emphasis added). *See also Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874) (equitable tolling may apply "though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party") (quoted in *Holmberg v. Armbrecht,* 326 U.S. 712, 66 S.Ct. 176, 90 L.Ed. 421 (1945)).

Thus, Majid need not show that Fielitz or Acken were involved in the alleged concealment of evidence, but just that Acken's identity was concealed from him despite his attempts to ascertain the identity of the assailant. Equitable tolling is therefore an issue to be resolved, and the contested evidence is relevant to this issue.

However, the issue of equitable tolling is, by definition, to be determined by the court, and not by a jury. *See Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 60 (2d Cir.1986) ("The doctrine [of equitable estoppel] ... is equitable in nature...."). Although some courts have made equitable tolling a jury issue, *see, e.g., Robertson v. Seidman,* No. 79 Civ. 3271, slip op. (Jan. 23, 1981) (RWS), in the context of this case, the issue of equitable tolling is better decided by the court. For one thing, as defendants point out, an element to consider in the determination of fraudulent concealment is the risk of prejudice to defendants of presenting to a jury considering the assault claims the claims of fraudulent concealment on the part of Green Haven video monitors and DOCs counsel's office. If equitable tolling is found as to Acken, a Rule 403 determination will be made with respect to the balance between prejudice and probative value.

It is so ordered.